**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN C. McMUNIGAL,<br><br>    Plaintiff,<br><br>  v.<br><br>KATE E. BLOCH,<br><br>    Defendant.             / | No. C 10-02765 SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT AND DENYING PLAINTIFF'S MOTION TO CONVERT DEFENDANT'S DISMISSAL MOTION INTO A MOTION FOR SUMMARY JUDGMENT** |

On December 20, 2010, the Court heard argument on defendant's motion to dismiss the complaint as well as plaintiff's motion to convert defendant's dismissal motion into a motion for summary judgment. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS defendant's motion to dismiss and DISMISSES the complaint with prejudice, finding after argument that leave to amend would be futile. The Court also DENIES plaintiff's motion to convert defendant's dismissal motion into a motion for summary judgment.

**BACKGROUND**

Plaintiff Kevin McMUNIGAL, a professor of law at Case Western Reserve University School of Law, and defendant Kate Bloch, a professor of law at the Hastings College of Law, agreed to create a criminal law casebook together in 1999. Compl. ¶¶ 3-5. In April of 2000, the parties entered into a publication agreement ("Aspen Agreement") with Aspen Publishers ("Aspen") to publish a casebook, which was to be entitled *Criminal Law: A Contemporary Approach* ("Casebook"), as well as an accompanying teacher's manual. *Id.* ¶ 6. The Aspen Agreement described plaintiff and defendant collectively as "Authors." *Id.*, Ex. 2. According to the Aspen Agreement, the "Authors" were required

to submit a single manuscript to Aspen by August 15, 2003. *Id.* ¶ 1. The Agreement granted Aspen "all right, title, and interest" in and to the Casebook, including the copyright. *Id.* ¶ 2. The Agreement also provided that Aspen may either terminate the Agreement or change the delivery date if the "Authors" do not satisfy the delivery date. *Id.* The "Authors" were also "jointly and severally liable for the obligations contained in th[e] Agreement." *Id.* ¶ 4. The Agreement provided that Aspen would advance both "Authors" sums of $4,000, to be used by both plaintiff and defendant, for certain expenses. *Id.*, Insert B. The Aspen Agreement also provided that "[a]uthorship credit shall be given to the Authors in alphabetical order," rather than by each author's independent contributions. *Id.* ¶ 7. With respect to future editions, the Agreement provided that either "Author" may prepare a revision of the Casebook. *Id.*, Insert D. The Agreement stated that "if neither Author prepares or is able to prepare [a revision] as agreed, a new co-author shall be selected." *Id.*

According to the complaint, plaintiff and defendant "independently selected and edited cases, statutes, jury instructions, and scholarly excerpts and wrote original text, problems, and questions for [their] parts of the Casebook." *Id.* ¶ 10-11. Plaintiff alleges that defendant failed to obtain permission to use the copyrighted items she selected as required by the Aspen Agreement, forcing Aspen to do so in December of 2004. *Id.* ¶¶ 19-20. Plaintiff also alleges that defendant frequently submitted her work to Aspen past deadline during 2004 and 2005. *Id.* ¶ 18. Defendant's breaches of the Aspen Agreement allegedly "forced Aspen to delay publication of the Casebook until April 29, 2005, over a year after the originally scheduled publication date." *Id.* ¶ 13. Once published, the Casebook listed the plaintiff and defendant as the authors in alphabetical order, and did not identify which parts of the Casebook were authored by whom. Decl. of Jacqueline Scott Corley, Ex. A (Casebook).

The Aspen Agreement also required plaintiff and defendant to write a teacher's manual for the Casebook by January 1, 2004, which was scheduled for publication around March 1, 2004. Compl. ¶¶ 22-23. In the spring of 2005, defendant allegedly insisted that she write a separate teacher's manual for the entire casebook, rather than divide the writing of a single teacher's manual between herself and plaintiff. *Id.* ¶ 27. During the summer and fall of 2005, defendant allegedly did not inform Aspen or plaintiff when she would finish her draft of the teacher's manual. *Id.* ¶ 28. Plaintiff alleges that as a result, Aspen was forced "to delay publication of the teacher's manuals until March of 2006, almost a

1  year after the Casebook was published and nearly two years after the originally scheduled publication
2  date for the teacher's manual." *Id.* ¶ 31. Aspen published plaintiff's and defendant's teacher's manuals
3  for the Casebook in one volume, with "Part I" written by plaintiff and "Part II" written by defendant.
4  *Id.* ¶ 30. Allegedly because of defendant's breaches of the Aspen Agreement, Aspen decided to not
5  publish a revised edition of the Casebook. *Id.* ¶ 34.

6  "Plaintiff and Defendant [allegedly] exchanged contract offers, counter-offers, and acceptances
7  from May through November of 2007" in order to separate as authors and divide the Casebook materials
8  by authorship. *Id.* ¶¶ 37-38. Plaintiff alleges that on November 13, 2007, he and defendant "reached
9  final agreement to separate as authors, to divide the Casebook, and to recognize that each holds sole
10 copyright to their respective parts of the Casebook" ("Separation Agreement"). *Id.* ¶ 40.

11 On November 9, 2007, Aspen offered plaintiff and defendant new contracts to write separate
12 criminal law casebooks, on the condition that they finalize their agreement to separate as authors and
13 divide the Casebook materials as well as each submit new casebook proposals. *Id.* ¶¶ 43-44. Plaintiff
14 alleges that he submitted a new casebook proposal to Aspen on November 12, 2007, three days before
15 his November 15, 2007 deadline. *Id.* ¶¶ 44-45. Defendant, however, did not submit a new casebook
16 proposal. *Id.* ¶ 47. Plaintiff alleges that Aspen agreed to publish a new criminal law casebook by
17 plaintiff, on the condition that he "execut[e] a formal memorialization of the Separation Agreement."
18 *Id.* ¶ 46. On November 23, 2007, defendant allegedly repudiated the Separation Agreement and refused
19 to execute a formal memorialization of it. *Id.* ¶¶ 48-49. Plaintiff alleges that as a result, Aspen refused
20 to publish the new criminal law casebook proposed by plaintiff. *Id.* ¶ 50. When Aspen concluded that
21 it would not publish a revised edition of the Casebook, Aspen wrote to plaintiff and defendant,
22 informing them that "the copyright for future editions revert[s] back to you both." *Id.*, Ex. 3.

23 Plaintiff originally filed suit in the Northern District of Ohio. Def. RJN, Ex. A. That case was
24 dismissed for lack of personal jurisdiction. *Id.*, Ex. K.[1] Plaintiff filed the present suit on June 24, 2010.

---

[1] Defendant requests the Court to take judicial notice of the court documents filed in the Ohio lawsuit. *See* Def. RJN (Docket No. 14). The Court grants the request for judicial notice, but only for purposes of noticing the existence of the Ohio lawsuit, the claims made in the lawsuit, and the fact that various documents were filed therein. *See In re Bare Escentuals, Inc. Sec. Litig.*, 2010 WL 3893622, * 11 (N.D. Cal., Sept. 30, 2010) ("[T]he Court may take judicial notice of the existence of unrelated

3

*See* Compl. Plaintiff seeks (1) declaratory judgment regarding ownership of the copyright to the Casebook materials, (2) partition of the copyright for the Casebook, (3) declaratory judgment regarding the validity of the Separation Agreement and ownership of the copyright to the Casebook materials under the Separation Agreement, (4) specific performance of the Separation Agreement, (5) promissory estoppel, (6) estoppel by acquiescence, (7) damages for breach of the Aspen Agreement, and (8) damages for breach of the Separation Agreement. *Id.* ¶¶ 51-125.

Presently before the Court is (1) defendant's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and (2) plaintiff's motion to convert defendant's dismissal motion into a motion for summary judgment.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that 'a district court should grant leave to amend even if no request

---

court documents, although it will not take judicial notice of such documents for the truth of the matter asserted within.").

4

to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

**DISCUSSION**

**I.  Defendant's Motion to Dismiss**

**A.  Count I: Declaratory Judgment Regarding Ownership of the Casebook Materials**

In Count I of the complaint, plaintiff "asks this Court to declare the rights and legal obligations of the parties with respect to copyright to the materials collected in the Casebook." Compl. ¶ 63. Plaintiff seeks declaratory judgment that the Casebook is a "collective work," and he therefore owns sole copyright to the parts of the Casebook he created. *Id.* ¶ 59, 61. Defendant argues that Count I should be dismissed because the Casebook is a "joint work."

The distinction between joint works and collective works is significant. A "joint work" is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "The authors of a joint work are co-owners of copyright in the work." *Id.* § 201(a). On the other hand, a "collective work" is a "work . . . in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." *Id.* § 101. Examples of collective works are periodical issues, anthologies, and encyclopedias. *Id.* Furthermore, "[c]opyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole, and vests initially in the author of the contribution." *Id.* § 201(c).

Courts use three criteria to determine whether a work is jointly authored. *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008). First, courts determine "whether the putative coauthors ma[de] objective manifestations of a shared intent to be coauthors." *Id.* (internal quotation marks and citation omitted). "A contract evidencing intent to be or not to be coauthors is dispositive." *Id.* Second, courts consider "whether the alleged author superintended the work by exercising control." *Id.* This is often the most important factor. *Id.* Third, courts consider "whether the audience appeal of the work can be attributed to both authors, and whether the share of each in its

5

success cannot be appraised." *Id.* (internal quotation marks and citation omitted).

Applying these factors here, the Court finds that the Casebook is a joint work as a matter of law. First, there is a contract evidencing plaintiff's and defendant's objective manifestation of their intent to be co-authors. The Aspen Agreement describes plaintiff and defendant collectively as "Authors," and describes their obligations as joint obligations. Compl., Ex. 2. For instance, under the Aspen Agreement, the "Authors" are required to submit a single manuscript to Aspen. *Id.* ¶ 1. Aspen may either terminate the Agreement or change the delivery date if the "Authors" do not satisfy the delivery date. *Id.* The "Authors" are "jointly and severally liable for the obligations contained in th[e] Agreement." *Id.* ¶ 4. The Agreement provides that Aspen would advance both "Authors" sums of $4,000, to be used by both plaintiff and defendant, for certain expenses. *Id.*, Insert B. The Aspen Agreement also provides that "[a]uthorship credit shall be given to the Authors in alphabetical order," rather than by each author's independent contributions. *Id.* ¶ 7. Furthermore, either "Author" may prepare a revision of the Casebook. *Id.*, Insert D. The Agreement states that "if neither Author prepares or is able to prepare [a revision] as agreed, a new *co-author* shall be selected." *Id.* (emphasis added). Viewed as a whole and in the absence of any language in the Agreement supporting plaintiff's position that the Casebook is a collective work, the Court holds that the contract evidences the authors' objective intent to be co-authors and supports a finding that the Casebook is a joint work as a matter of law. *See Richlin*, 531 F.3d at 968.

Plaintiff argues that the Aspen Agreement does not establish that the Casebook is a joint work because it does not explicitly label the Casebook a joint work, nor does it directly call the parties "co-authors," which would indicate joint authorship.[2] Nonetheless, the wording of the Aspen Agreement, as well as the fact that the Casebook attributes authorship to both parties alphabetically – without any indication as to which party authored what parts of the Casebook – indicate that the Casebook is a joint work. Furthermore, as explained above, the Aspen Agreement implies that plaintiff and defendant are

---

[2] At the hearing, the only example plaintiff could point to of language in the Aspen Agreement that evidences the parties' intent to create a collective work is the provision in the Aspen Agreement that plaintiff and defendant would be "collectively" referred to as the "Authors" in the Agreement. Compl., Ex. 2, at 1. This use of the word "collectively," however, does not relate to the work's status as a joint work or a collective work.

6

co-authors. Compl., Ex. 2 (Aspen Agreement), Insert D. ("[I]f neither Author prepares or is able to prepare [a revision] as agreed, a new *co-author* shall be selected." (emphasis added)). The Aspen Agreement and Casebook present sufficient objective evidence demonstrating that the intent of the parties was the creation of a joint work, as a matter of law.

Turning to the second *Richlin* factor, both plaintiff and defendant supervised the Casebook by exercising control. *See Richlin*, 531 F.3d at 968. The complaint alleges that the parties "divided responsibility for creating various parts of the Casebook." Compl. ¶ 9. Plaintiff argues, however, that this fact – the parties' independent creation of their respective parts of the Casebook – supports his argument that the Casebook falls under the Copyright Act's definition of a "collective work." *See* 17 U.S.C. § 101 (defining "collective work" as a work "in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole"). While we assume the truth of plaintiff's allegation for purposes of this motion, the fact that the parties "independently selected and edited cases, statutes, jury instructions, and scholarly excerpts and wrote original text, problems, and questions for [their] parts of the Casebook," *id.* ¶ 10-11, does not mean that the Casebook is a "collective" work. To the contrary, two authors may create parts of a "joint work" independently, as long as the authors intended their independent contributions to "be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101 (defining "joint work"). Here, it is apparent that the Casebook is a unitary whole. The Casebook attributes authorship to the plaintiff and defendant in alphabetical order and does not identify which parts of the Casebook were authored by whom. Corley Decl., Ex. A (Casebook). Furthermore, plaintiff did not explain how the parts of the Casebook he authored independently could stand alone, separate from defendant's allegedly independently authored sections. Instead, the Casebook relies on each author's contributions to make a unitary whole.[3]

---

[3] As the Separation Agreement shows, there was a significant amount of material in the Casebook that was "jointly" created. *See* Compl., Ex. 1, at 6-7. In addition, the Separation Agreement shows that plaintiff and defendant sought "sole copyright" for different *parts* of chapters, such as specific questions and problems. *See id.* at 7-24. Therefore, the Separation Agreement attached to the complaint by plaintiff supports the Court's conclusion that each party's "sole contributions" to the Casebook cannot stand on their own as separate works. Rather, they were intertwined to create a unitary whole.

7

Under the third *Richlin* factor, the Court finds that the audience appeal of the work can be attributed to both plaintiff and defendant, and the share of each in its success cannot be separately appraised. The Casebook lists the plaintiff and defendant as the authors in alphabetical order, and does not identify which parts of the Casebook were authored by whom. Corley Decl., Ex. A (Casebook). In contrast, the teacher's manual identifies plaintiff as the author of Part I and defendant as the author of Part II, demonstrating that it was possible to assign independent credit if desired. The fact that the Casebook was attributed to both plaintiff and defendant, without distinction, makes it impossible to determine which one, if any, contributed more to the Casebook's audience appeal or success.

Having reviewed the *Richlin* factors, the Court finds that the Casebook is a joint work as a matter of law. Plaintiff argues that whether the Casebook is a joint work or a collective work is not a proper issue to resolve on a motion to dismiss. Plaintiff points out that the two cases defendant cites that set forth the criteria courts use to decide whether a work is a joint work – *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000) and *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962 (9th Cir. 2008) – both reviewed the district court judge's ruling on a motion for summary judgment, not on a motion to dismiss. *Aalmuhammed*, 202 F.3d at 1230; *Richlin*, 531 F.3d at 966-67. In the present case, however, there is enough evidence appropriately before the Court to allow this determination to be made on a motion to dismiss. This evidence includes the Aspen Agreement, the Casebook, the purported Separation Agreement and the letter from Aspen granting the copyright for future editions to "both" of the authors once Aspen decided not to publish a new edition. Each of these documents was either attached to plaintiff's complaint or incorporated therein by specific reference.

Finally, plaintiff argues that his certificate of the 2004 registration for the parts of the Casebook he created, Compl., Ex. 4 (Certificate of Registration for "McMUNIGAL Criminal Law Contribution"), is *prima facie* evidence that he holds sole copyright to the parts of the Casebook he created and that the Casebook is a collective work. Copyright registration, however, creates a rebuttable presumption of originality. *Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004). It does not create a presumption that the author holds sole copyright to the work. Moreover, as defendant points out, there is no dispute that Aspen owns the copyright to the original work. *See* Compl., Ex. 3 (providing that the copyright for "future editions" of the Casebook reverts back to the authors).

8

1  Defendant's motion to dismiss Count I is GRANTED without leave to amend.

### B. Count II: Partition of the Copyright for the Casebook

In Count II, plaintiff requests, "[i]f the Court finds under Count I, above, that the Casebook is a joint work rather than a collective work, and that therefore Plaintiff and Defendant hold joint copyright to all of the casebook materials, Plaintiff seeks partition of that joint copyright pursuant to California Code of Civil Procedure § 872.210." Compl. ¶ 65. Defendant argues that a court does not have the authority to partition a copyright.

Under federal law, a transfer of copyright ownership is not valid unless the copyright owner executes a signed writing transferring the ownership. 17 U.S.C. § 204(a). Furthermore, copyright ownership may not be transferred "by any governmental body or other official." *Id.* § 201(e). *Cf. Advance Magazine Publishers, Inc., v. Leach*, 466 F. Supp. 2d 628, 636 (D. Md. 2006) ("Defendant's claim to have effected the transfer [of copyright] by operation of law through adverse possession amounts to a claim for an involuntary transfer of rights, which is barred by 17 U.S.C. § 201(e)."). There is no case law to support the proposition that a court has authority to partition joint copyright ownership. Plaintiff's opposition discusses legal authority that tends to establish that a co-owner of property has a right to partition a tenancy-in-common and that co-owners of a copyright are generally treated as tenants in common. This does not establish, however, that a court may partition a jointly held copyright in the absence of a signed transfer under Section 204(a) and in contravention to Section 201(e). Even if state law governs remedies a co-owner may seek when another co-owner refuses to share profits from a jointly copyrighted work, federal law still governs ownership and transfer of the copyright itself. *See Effects Assocs. Inc. v. Cohen*, 908 F.2d 555, 556-57 (9th Cir. 1990) (applying federal law to the transfer of copyright ownership).

Accordingly, defendant's motion to dismiss Count II is GRANTED without leave to amend.

### C. Count III: Declaratory Judgment Regarding the Separation Agreement and Count IV: Specific Performance of the Separation Agreement

In Count III, plaintiff seeks declaratory judgment regarding the validity of the Separation

9

Agreement and ownership of the copyright to the Casebook materials under the Separation Agreement. In Count IV, plaintiff seeks specific performance of the Separation Agreement. Defendant argues that these claims are premised on defendant's transfer, or promise to transfer, her joint copyright interests to plaintiff. Defendant contends that she never executed a signed writing transferring, or agreeing to transfer, her copyright ownership to plaintiff for the purposes of Section 204(a) of the Copyright Act, and, therefore, this claim should be dismissed.

As a preliminary matter, plaintiff argues that a motion to dismiss is not proper for resolving defendant's Section 204(a) defense. "Ordinarily affirmative defenses may not be raised by motion to dismiss," except when "the defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (internal citation omitted). In regard to raising a defense under Section 204(a), however, "the treatises and considerations of judicial economy dictate that plaintiffs should be required to plead facts suggesting why § 204(a) does not preclude their claims, in order to survive a motion to dismiss." *Pamfiloff v. Giant Records, Inc.*, No. C-91-1708, 1991 WL 334916, at *2 (N.D. Cal. Oct. 28, 1991). The Court will consider defendant's defense under Section 204(a).

Section 204(a) of the Copyright Act provides, "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and *signed by the owner of the rights conveyed* or such owner's duly authorized agent." 17 U.S.C. § 204(a) (emphasis added). Plaintiff has not adequately alleged that defendant signed a writing transferring, or agreeing to transfer, her copyright ownership to plaintiff. The complaint alleges that "[o]n November 13, 2007, Plaintiff and Defendant reached final agreement to separate as authors, to divide the Casebook, and to recognize that each holds sole copyright to their respective parts of the casebook when Plaintiff agreed to all remaining conditions set forth in Defendant's prior counteroffer and accepted that counteroffer." Compl. ¶ 40. Defendant asserts that a November 13, 2007 email from plaintiff to defendant is the basis of this allegation, and requests that the Court take judicial notice of the email. Def. Mot. to Dismiss, at 8; Def. RJN, Ex. I.

The Court grants defendant's request for judicial notice for the following reasons. First, the Court can take judicial notice of claims made and documents filed in the Ohio lawsuit. *See In re Bare Escentuals, Inc. Sec. Litig.*, 2010 WL 3893622, at *11. In the complaint he filed in the Northern District

1   of Ohio, plaintiff explicitly alleged that the November 13, 2007 email constituted the Separation
2   Agreement. Def. RJN, Ex. A (Complaint, *McMUNIGAL v. Bloch*, 09-1674-CAB, Northern District of
3   Ohio), ¶ 41 ("On November 13, 2007, Plaintiff McMUNIGAL and Defendant Bloch finalized the two
4   remaining issues and divided the Casebook . . . . (See exhibit 9 – McMUNIGAL's November 13, 2007
5   acceptance of Defendant Bloch's position regarding the two remaining issues)."); Def. RJN, Ex. I
6   (Exhibit 9 to Complaint, *McMUNIGAL v. Bloch*, 09-1674-CAB, Northern District of Ohio) (the
7   November 13, 2007 email). Second, the November 13, 2007 email is incorporated by reference into the
8   complaint in this case. Compl. ¶ 40. The "incorporation by reference" doctrine allows the Court "to
9   take into account documents 'whose contents are alleged in a complaint and whose authenticity no party
10  questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393
11  F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th
12  Cir. 1999)). Finally, neither party disputes the authenticity of this email, nor does plaintiff object to the
13  request for judicial notice.

14  The November 13, 2007 email, however, was sent by plaintiff to defendant. As the email was
15  not sent by defendant, it cannot be a writing signed by defendant under Section 204(a). Def. RJN, Ex.
16  I.[4] At oral argument, plaintiff was unable to point to another writing that could satisfy the Section
17  204(a)'s signed writing requirement. Rather, plaintiff argued that the signed writing requirement was
18  satisfied by the series of emails plaintiff and defendant exchanged as they negotiated their separation
19  as authors and division of the copyright ownership.[5] A series of negotiations, however, is insufficient.
20  In order to satisfy Section 204(a)'s signed writing requirement, plaintiff must be able to point to a single
21  writing from defendant that evidences the parties' full and complete agreement to transfer the

---

[4] Plaintiff argues that emails assenting to a contract constitute a "signature" under the E-SIGN Act. The Court need not reach the issue of whether the E-SIGN Act applies to transfer of copyright interests, however, as there is no writing from defendant alleged here.

[5] Plaintiff's motion to convert defendant's dismissal motion to a motion for summary judgment confirms that plaintiff believed that a series of emails plaintiff and defendant exchanged could satisfy Section 204(a)'s writing requirement. *See* Pl. Mot. to Convert Def. Dismissal Mot. to Mot. for Summary Judgment, at 6 (describing the Separation Agreement as an "exchange of emails"); *id.* at 8 ("[T]he entire bargaining exchange creat[ed] the agreement to divide the Casebook."). As explained above, however, a series of writings is insufficient; plaintiff must be able to point to a single writing from defendant that evidences the parties' full and complete agreement to transfer the copyright in order to satisfy Section 204(a).

11

copyright.[6]

Accordingly, defendant's motion to dismiss Counts III and IV is GRANTED without leave to amend. Plaintiff's own admissions as well as his failure to identify a writing that could satisfy Section 204(a) at oral argument show that he is unable to adequately amend the complaint.

### D.  Count V: Promissory Estoppel and Count VI: Estoppel by Acquiescence

If the Separation Agreement is found to not be legally binding, plaintiff requests equitable remedies to force defendant to transfer her interests in the copyright. Specifically, in Count V, plaintiff "requests judgment against Defendant estopping her from failing to fulfill her promise to separate from Plaintiff as an author and divide the Casebook's materials between Plaintiff and Defendant as described in the Separation Agreement." Compl. ¶ 99. In Count VI, plaintiff "requests judgment against Defendant estopping her from changing her position and failing to separate from Plaintiff as an author and divide the Casebook's materials between Plaintiff and Defendant as described in the Separation Agreement." *Id.* ¶ 113. Defendant argues that by stating these claims, which seek enforcement of the Separation Agreement, plaintiff is seeking to circumvent the signed writing requirement of Section 204(a).

Equitable defenses, such as promissory estoppel and estoppel by acquiescence, may not be used to avoid the signed writing requirement of Section 204(a). *Pamfiloff v. Giant Records, Inc.*, 794 F. Supp. 933, 937 (N.D. Cal. 1992) ("Plaintiffs are unable to locate a single case in which a court allowed the doctrine of equitable estoppel to be used to circumvent the writing requirement of Section 204(a) and thus, bestow upon a party substantive copyright ownership absent a written agreement to that effect. Additionally, none of the commentators in the field of copyright law have suggested the application of equitable defenses to the requirements of Section 204(a). In general, the commentators agree that an assignment of copyright which is not memorialized in writing is not effective to transfer the

---

[6] Plaintiff also argues that "the Separation Agreement is not a transfer of copyright ownership, but an agreement between the parties simply to acknowledge and clarify the rights each already had." Pl. Opp., at 11. Under this view, the Separation Agreement would not have to satisfy Section 204(a)'s signed writing requirement. This interpretation of the Separation Agreement, however, is unconvincing. Furthermore, it is inconsistent with the Court's view that the Casebook is a joint work, as explained above.

12

copyright."). Plaintiff cannot circumvent the signed writing requirement by alleging promissory estoppel or estoppel by acquiescence.

Defendant's motion to dismiss Counts V and VI is GRANTED without leave to amend.

### E.      Count VII: Damages for Breach of the Aspen Agreement

In Count VII of the complaint, plaintiff seeks damages for defendant's alleged violation of the Aspen Agreement by (1) failing to meet the August 15, 2003 deadline for submitting the Casebook manuscript to Aspen, (2) failing to meet the January 1, 2004 deadline for submitting the instructor's manual, and (3) failing to obtain copyright releases for the material she used in the Casebook, which forced Aspen to do so in December of 2004. Compl. ¶¶ 114-22. Defendant argues that Count VII should be dismissed because these claims for the breach of the Aspen Agreement are barred by the statute of limitations. According to defendant, the Aspen Agreement is governed by Maryland law, which dictates that the statute of limitations for breach of contract is three years.

The Court agrees that according to Maryland law, the statute of limitations on plaintiff's claims regarding breach of the Aspen Agreement has run. As a preliminary matter, Maryland law governs the Aspen Agreement. The Aspen Agreement contains a choice of law provision, which provides that Maryland law governs. *Id.*, Ex. 2 ¶ 18. To determine whether such a contractual choice of law provision is enforceable, courts look to:

> (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law.

*Farb v. Superior Court*, 174 Cal. App. 4th 678, 686 (2009) (internal quotation marks and emphasis omitted). In this case, the transaction is the Aspen Agreement, which was between Aspen, plaintiff, and defendant. Compl., Ex. 2, p. 1. Aspen's principal place of business is Maryland. *Id.* Accordingly, Maryland has a substantial relationship to the parties' transaction. Furthermore, neither party argues that the applicable statute of limitations in Maryland is contrary to a fundamental policy of California.

1 The choice of law provision is, therefore, enforceable.

2 According to Maryland law, the statute of limitations for breach of contract is three years. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007), citing Md. Code Ann., Cts. & Jud. Proc. § 5-101. "In Maryland, a cause of action for breach of contract generally accrues when the contract is breached." *Id.* at 465. In the complaint, plaintiff seeks damages for defendant's alleged violation of the Aspen Agreement by failing to meet both the August 15, 2003 and January 1, 2004 deadlines, as well as for failing to obtain the necessary copyright releases before December of 2004. Compl. ¶¶ 114-22. Plaintiff first filed suit in the Northern District of Ohio on July 21, 2009, and in this Court on June 24, 2010. Def. RJN, Ex. A; Compl. As more than five years passed before plaintiff filed suit by any measure of the time period, plaintiff's claim for violation of the Aspen Agreement is barred by the applicable statute of limitations.

Plaintiff argues, however, that defendant's breaches of the Aspen Agreement in 2003 and 2004 caused Aspen to decide to not publish a revised edition of the Casebook. Plaintiff contends, therefore, that his "breach of contract claim for lost royalties in connection with future revised editions of the Casebook did not accrue (and could not have accrued) until he learned of Aspen's decision not to publish any revised editions of the Casebook" on July 8, 2008. Pl. Opp., at 23. In Maryland, however, the statute of limitations for breach of contract begins to run at the time a contract is breached. *Mumford v. Staton, Whaley & Price*, 255 A.2d 359, 367 (Md. 1969). Here, the statute of limitations began to run when defendant allegedly breached the Aspen Agreement in 2003 and 2004, well over five years before plaintiff filed suit. Furthermore, plaintiff knew of the potential for lost royalties relating to defendant's alleged breaches in 2003 and 2004, at the time these breaches occurred.

Plaintiff finally argues that Maryland Courts and Judicial Proceedings Code § 5-203 tolls the statute here because defendant engaged in constructive fraud. According to § 5-203, "[i]f the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." Plaintiff contends the defendant allegedly engaged in constructive fraud by falsely misleading plaintiff into believing that she would sign the Separation Agreement, and therefore the statute of limitations actually began to run only once plaintiff discovered the fraud on

14

November 23, 2007, when defendant expressly repudiated the Separation Agreement. According to plaintiff, defendant's "constructive fraud" relates to the statute of limitations for breach of the Aspen Agreement because "Defendant's months of reassurances that she would execute the Separation Agreement, and her substantive participation in the drafting of that agreement, fraudulently led Plaintiff to believe that he did not have, nor did he need to pursue, any cause of action based on Defendant's earlier delays in performing her obligations under the Aspen Agreement." Pl. Opp., at 24.

If plaintiff chose to sit on his claims for lost royalties in hopes of securing the Separation Agreement, his hopes do not toll the statute of limitations for claims he knew had accrued. This argument also ignores which alleged breaches of the Aspen Agreement underlie plaintiff's claim for damages in Count VII. In Count VII, plaintiff seeks damages for defendant's alleged violations of the Aspen Agreement by failing to meet both the August 15, 2003 and January 1, 2004 deadlines, as well as for failing to obtain the necessary copyright releases. Compl. ¶¶ 114-22. Accordingly, as explained above, the statute of limitations began to run when defendant allegedly breached the Aspen Agreement in 2003 and 2004, not when defendant repudiated the Separation Agreement on November 23, 2007. Finally, the complaint does not and cannot allege that defendant engaged in constructive fraud by misleading plaintiff into believing that defendant met the August 15, 2003 and January 1, 2004 deadlines or obtained the necessary copyright releases, when she in fact did not. Section 5-203 does not apply to Count VII.

Accordingly, defendant's motion to dismiss Count VII is GRANTED without leave to amend.

### F. Count VIII: Damages for Breach of the Separation Agreement

In Count VIII, plaintiff "requests judgment in his favor against Defendant for her breaches of the Separation Agreement granting damages in an amount in excess of $75,000, interest from the time of judgment, [and] costs." Compl. ¶ 125. Defendant argues that this claim is premised on defendant's transfer, or promise to transfer, her joint copyright interests to plaintiff.

However, as discussed above, plaintiff has not and, based on his admissions, cannot allege a signed writing that satisfies Section 204(a)'s signed writing requirement. Accordingly, plaintiff's claim for damages for breach of the Separation Agreement must be dismissed without leave to amend.

15

Defendant's motion to dismiss Count VIII is GRANTED without leave to amend.

## II. Plaintiff's Motion to Convert Defendant's Dismissal Motion into a Motion for Summary Judgment

On December 15, 2010, plaintiff filed a motion to convert defendant's dismissal motion into a motion for summary judgment. Plaintiff argues that (1) Federal Rule of Civil Procedure 12(d) mandates that the motion be treated as a summary judgment motion, (2) converting defendant's motion into a motion for summary judgment would be in the interests of judicial efficiency, (3) defendant's motion raises factual and evidentiary issues, (4) defendant's motion is a de facto summary judgment motion, and (5) the record is not well-developed. Defendant did not file a response to this late-filed motion.

The only binding legal authority plaintiff cited in support of his motion was Rule 12(d). Rule 12(d) states that when ruling on a motion to dismiss, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summery judgment under Rule 56." Rule 12(d) does not apply to the present case. In order to rule on defendant's motion, the Court relies only on the pleadings and matters incorporated by reference into the pleadings or documents otherwise subject to judicial notice. Such matters are appropriate for consideration on a motion to dismiss. Furthermore, plaintiff's main argument, that the issues presented in the motion to dismiss would be more properly decided in a motion for summary judgment, was already presented to the Court in plaintiff's opposition to the motion to dismiss. *See* Pl. Opp., at 6, 10. The Court considered the arguments in plaintiff's opposition when ruling on the motion to dismiss.

Plaintiff's motion to convert defendant's dismissal motion into a motion for summary judgment is DENIED.

///

**CONCLUSION**

For the foregoing reasons and good cause shown, the Court hereby GRANTS defendant's motion to dismiss (Docket No. 14). The complaint is DISMISSED WITH PREJUDICE. The Court also hereby DENIES plaintiff's motion to convert defendant's dismissal motion into a motion for summary judgment (Docket No. 20).

**IT IS SO ORDERED.**

Dated: December 23, 2010

SUSAN ILLSTON
United States District Judge